IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ENVIRONMENTAL PROTECTION
COMMISSION OF HILLSBOROUGH
COUNTY, FLORIDA,

           Plaintiff,

v.                         CASE NO.: 8:20-cv-02238-VMC-JSS

MERCEDES-BENZ USA, LLC;
DAIMLER AKTIENGESELLSCHAFT;
ROBERT BOSCH LLC; ROBERT
BOSCH GMBH;

           Defendants.

_____

## DEFENDANT ROBERT BOSCH LLC'S
## MOTION TO DISMISS SECOND AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6), Defendant Robert Bosch LLC ("Bosch LLC") moves to dismiss Plaintiff's Second Amended Complaint (Dkt. 7, "SAC") for lack of personal jurisdiction and failure to state a claim. In addition, pursuant to the Court's Order Granting Defendants' Unopposed Motion to Consolidate Motions to Dismiss, (Dkt. 70), Bosch LLC joins Daimler AG and Mercedes-Benz USA, LLC's Motion to Dismiss, (Dkt. 71), in full, because Daimler's arguments apply with equal force to Bosch LLC.

## PRELIMINARY STATEMENT

The claims against Bosch LLC must be dismissed for lack of personal jurisdiction. This litigation arises out of "defeat device" software purportedly installed in certain diesel vehicles manufactured by Daimler AG ("Daimler") and sold by Mercedes-Benz USA, LLC ("Mercedes," and, collectively, the "Mercedes

Defendants"). However, Bosch LLC did not design or manufacture emissions control software for these vehicles, and Bosch LLC is not alleged to have engaged in any relevant conduct directed towards Florida. The Court therefore does not have personal jurisdiction over Bosch LLC. Additionally, Plaintiff's claims are preempted by the Clean Air Act, barred by the statute of limitations, and fail to state a claim with respect to any post-sale tampering and with respect to certain models of the Sprinter van, for reasons explained in the Mercedes Defendants' Motion to Dismiss, (Dkt. 71), which Bosch LLC adopts. But even if the claims were not preempted and time-barred, the SAC must be dismissed because it fails to state a claim against Bosch LLC under EPC Rules Chapter 1-8. Accordingly, Bosch LLC respectfully requests that Plaintiff's claims be dismissed with prejudice.

## FACTUAL BACKGROUND

Plaintiff alleges that Bosch LLC, "directly and/or in conjunction with its parent Robert Bosch GmbH" ("Bosch GmbH"), assisted the Mercedes Defendants with the design and development of "defeat device[s]" that Daimler purportedly installed in certain Mercedes diesel vehicles ("Mercedes Vehicles"). (SAC ¶¶ 12-13, 15, 25).[1] A "defeat device" is an auxiliary emission control device that "reduces the effectiveness" of an automobile's emissions control systems during ordinary driving conditions, and that has not been disclosed and justified as required by applicable federal regulations. (SAC ¶ 28). Installing a defeat device in a vehicle is a violation of the federal Clean

---

[1] Bosch LLC accepts Plaintiff's allegations, to the extent well-pled, as true for the purposes of the motion to dismiss, except where jurisdictionally relevant allegations are contravened by the evidence Bosch LLC submits in connection with this motion and have not been supported by Plaintiff.

Air Act. (*Id.* ¶ 28 (quoting 40 C.F.R. § 86.1803-01)).[2] In this case, the alleged defeat devices consisted of "software algorithms" that purportedly allowed the Mercedes Vehicles to evade EPA emissions regulations. (SAC ¶ 48). This software was allegedly designed to detect and to increase the effectiveness of the vehicle's emissions control system when a Mercedes Vehicle was undergoing emissions testing by the EPA, making the vehicle falsely appear to comply with EPA emissions standards necessary for EPA certification for sale in the United States. (SAC ¶¶ 27, 49). Plaintiffs do not allege that this software was designed or even required to meet any emissions standards promulgated by the State of Florida or Hillsborough County, and indeed federal law prohibits the promulgation of such standards for new automobiles. 42 U.S.C. § 7543(a).

The SAC alleges that Bosch GmbH manufactured and supplied the engine control unit ("ECU"), the EDC17, that was installed in the Mercedes Vehicles and contained this alleged defeat device software, and Bosch GmbH allegedly assisted Mercedes with the programming of this software. (SAC ¶¶ 70, 72). As to Bosch LLC, Plaintiff alleges that it promoted the concept of "Clean Diesel" across the United States. (SAC ¶ 21). Plaintiff also makes vague allegations that Bosch LLC "lobbied

---

[2]   Plaintiff omits a portion of the regulatory definition of defeat device, obscuring that the regulations provide for circumstances where a device conforming to the definition Plaintiff sets forth in the SAC would *not* be a "defeat device." *Compare* SAC ¶ 28 ("A device 'that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use' is called a 'defeat device'") *with* 40 C.F.R. § 86.1803-01 ("Defeat device means an auxiliary emission control device (AECD) that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use, *unless* . . . .") (emphasis added).

U.S. regulators to approve 'Clean Diesel,'" without specifying what sort of approval was being sought, or for which vehicles. *Id.*[3] Finally, Plaintiff asserts that, at some unspecified place and time, an unspecified "Bosch" entity "and Mercedes redesign[ed] and install[ed] newly created software algorithms in the [Mercedes Vehicles]." (SAC ¶ 38).

The declarations of Joe Capuano, attached as Exhibit A, and Robert Miklautsch, attached as Exhibit B, establish the following facts relevant to the question of personal jurisdiction:

- Bosch LLC is a nondomiciliary business, organized under the laws of Delaware with its principal place of business in Michigan, and it has no members that are residents of Florida. Ex. B, Miklautsch Dec. ¶¶ 3-5.

- Bosch LLC is not registered or qualified to do business in Florida, does not consent to the personal jurisdiction of this State, and does not have offices, design or manufacturing facilities, or any other real property in the State. *Id.* ¶¶ 6-10.

- Bosch LLC did not manufacture, assemble, sell, or lease the Mercedes Vehicles. Ex. A, Capuano Dec. ¶ 6. Nor did Bosch LLC create, design, develop, manufacture, assemble, sell, lease, supply, or distribute either the EDC17 ECUs or the associated software or calibrations for the Mercedes Vehicles. *Id.* ¶ 7.

- Bosch LLC did not create, and was not involved in the administration of, field fixes or recall campaigns for the EDC17 in the Mercedes Vehicles in Florida. *Id.* ¶ 8.

- Bosch LLC had no control over the destination of the Mercedes Vehicles or the EDC17 ECUs or the associated software or calibration installed in those vehicles. *Id.* ¶ 12.

- Contrary to Plaintiff's conclusory assertion that Bosch LLC employees "have collaborated . . . with Mercedes in this judicial district and have been present in

---

[3]     As Plaintiff's pleading elsewhere recognizes, the EPA issues certificates of conformity for vehicle models. *See, e.g.*, SAC ¶¶ 31-32 (noting auto "manufacturer must submit an application to the EPA . . . for each model year" indicating compliance with federal emissions standards). The EPA does not issue certificates of conformity for specific emissions control technologies, much less for a marketing concept like "Clean Diesel."

this district," (SAC ¶ 16), Bosch LLC does not conduct business for the design or manufacture of the original emissions systems of the Mercedes Vehicles in Florida, and it has no employees in Florida that perform related work. Ex. A, Capuano Dec. ¶¶ 4-5.

### ARGUMENT

## I.   The SAC Must be Dismissed Against Bosch LLC for Lack of Personal Jurisdiction

An action against a defendant must be dismissed when a court lacks personal jurisdiction over that defendant. Bosch LLC did not design or manufacture the software or ECUs installed in the Mercedes Vehicles at issue in this case, and has no Florida contacts relevant to Plaintiff's causes of action, and therefore no basis on which it could expect to be haled into a Florida court to answer Plaintiff's allegations. Ex. A, Capuano Dec. ¶¶ 7-12. Plaintiff combines its jurisdictional allegations against Bosch LLC and Bosch GmbH in an attempt to circumvent the requirement to establish personal jurisdiction over each individual defendant. Plaintiff makes the conclusory allegation that Bosch GmbH and Bosch LLC operate under the umbrella of the Bosch Group, and that regardless of whether an employee works for Bosch LLC or Bosch GmbH, "the individual holds him or herself out as working for Bosch." (SAC ¶¶ 17-18). But this shorthand does not make up for the fact that Plaintiff has failed to plead any jurisdictionally relevant conduct by any Bosch entity, much less by any employee of Bosch LLC. (*Id.* ¶¶ 18-19).

The only specific allegation as to Bosch LLC concerns its alleged generic marketing of "Clean Diesel" in the U.S. and lobbying of U.S. regulators. (SAC ¶ 21). Plaintiff's allegations, however, have no connection to Florida. Instead, they rely on

alleged marketing campaigns by Bosch LLC throughout the U.S. and the allegation that "Bosch" knew that Mercedes was using the defeat device in vehicles that ended up in Florida. (*Id.* ¶¶ 3, 16, 25). But allegedly defrauding federal and California regulators or engaging in marketing activity unrelated to Florida or the Mercedes Vehicles provides no basis to assert jurisdiction over Bosch LLC, a nonresident defendant, for allegedly tampering with vehicles in Hillsborough County. And even if Plaintiff had alleged that Bosch LLC in particular was aware that Mercedes would sell the Mercedes Vehicles throughout the U.S., this would not provide a basis for specific jurisdiction because such awareness would not constitute the directing of conduct to the forum from which the claims arise. (*See* SAC ¶¶ 1-5, 15-25, 37-38, 71).

## A. Legal Standard

The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. First, the Court must consider the jurisdictional question under the Florida long-arm statute. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). If there is a basis for personal jurisdiction under the long-arm statute, then the Court must determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

Plaintiff bears the initial burden of alleging sufficient facts to make out a *prima facie* case of jurisdiction. *Vision Media TV Grp., LLC v. Forte*, 724 F. Supp. 2d 1260, 1263 (S.D. Fla. 2010). In order to subject Bosch LLC, a nonresident defendant, to jurisdiction in Florida, Plaintiff "must do more than allege facts that show a possibility

of jurisdiction." *Jet Charter Serv., Inc. v. Koeck*, 907 F.2d 1110, 1112 (11th Cir. 1990). Plaintiff's allegations do not meet the standard for personal jurisdiction in Florida, especially when considered against Bosch LLC's declarations (attached hereto as Exhibits A-B). Consequently, the SAC must be dismissed against Bosch LLC.

### B. Argument

Plaintiff has failed to allege a prima facie case of personal jurisdiction over nonresident Bosch LLC because Bosch LLC is a Delaware corporation with its principal place of business in Michigan (SAC ¶ 15; Ex. B ¶¶ 3-4), and is therefore not subject to general jurisdiction in Florida. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Moreover, Plaintiff has not alleged any connection between its claims and Bosch LLC's alleged conduct, which is not even alleged to have occurred in or been directed at Florida. *See Hinkle v. Cont'l Motors, Inc.*, 268 F. Supp. 3d 1312, 1323–26 (M.D. Fla. 2017).

### 1. Florida's Long-Arm Statute

To determine whether long-arm jurisdiction is appropriate, the complaint must either plead a basis for jurisdiction using the actual language of the statute, section 48.193, or allege sufficient jurisdictional facts to support long-arm jurisdiction. *Gill v. Three Dimension Sys., Inc.*, 87 F. Supp. 2d 1278, 1284 (M.D. Fla. 2000). The Florida long-arm statute recognizes two kinds of personal jurisdiction over a nonresident defendant: specific jurisdiction and general jurisdiction. *See* Fla. Stat. § 48.193. The statute confers specific jurisdiction over a non-resident defendant if the claim asserted against the defendant arises from the defendant's contacts with Florida and those

contacts fall within one of nine statutorily enumerated categories. *See* id. § 48.193(1)(a). The statute confers general jurisdiction over a non-resident defendant engaged in substantial activity within the state—a high threshold to establish. *Id.*§ 48.193(2); *Caiozzo v. Am. Royal Arts Corp.*, 73 So. 3d 245, 250 (Fla. 4th DCA 2011); *Two Worlds United v. Zylstra*, 46 So. 3d 1175, 1178 (Fla. 2d DCA 2010).

"[T]he long-arm statute must be strictly construed, and any doubts about applicability of the statute resolved in favor of the defendant and against a conclusion that personal jurisdiction exists[.]" *Gadea v. Star Cruises*, Ltd., 949 So. 2d 1143, 1150 (Fla. 3d DCA 2007). Here, Plaintiff neither cites to section 48.193, tracks the language of the statute, nor states any facts sufficient to support either general or specific long-arm jurisdiction over Bosch LLC. Plaintiff has not sufficiently alleged that Bosch LLC is subject to general jurisdiction in the state or that its claims arise out of contacts between Bosch LLC and Florida, and the declarations attached hereto conclusively establish that it could not make such allegations. Therefore, the SAC must be dismissed.

   a.   **Plaintiff cannot establish general personal jurisdiction under the Florida long-arm statute.**

Plaintiff fails to plead facts demonstrating that Bosch LLC is subject to general jurisdiction in Florida. Fla. Stat. § 48.193(2). The threshold for establishing general jurisdiction is high, requiring "continuous and systematic general business contact" with Florida. *Caiozzo*, 73 So. 3d at 259; *Two Worlds United*, 46 So. 3d at 1178. There are no factual allegations in the SAC demonstrating that Bosch LLC has any substantial connections with Florida, or that its affiliation is so "continuous and

systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117 at 127.

Bosch LLC is not incorporated in Florida, and its principal place of business is not in Florida. (Ex. B, Miklautsch Dec. ¶¶ 3-9). Plaintiff sets forth no allegations of substantial conduct that would meet the high bar of general jurisdiction. Accordingly, Florida does not have general personal jurisdiction over Bosch LLC. *See Teva Pharm. Indus. v. Ruiz*, 181 So. 3d 513, 521 (Fla. 2d DCA 2015) (holding that because neither defendant "is incorporated in Florida or has its principal place of business here . . . Florida does not have general jurisdiction over either company").

        b.    **Plaintiff cannot establish specific personal jurisdiction under the Florida long-arm statute.**

"[A] nonresident defendant may be subject to specific jurisdiction under section 48.193(1) where the defendant committed any of the acts enumerated in the subsection within Florida and the cause of action arose from the act." *Caiazzo*, 73 So. 3d at 256. In other words, there must be a "causal connection" between the defendant's Florida contacts and the plaintiff's cause of action. *Trs. of Columbia Univ. v. Ocean World, S.A.*, 12 So. 3d 788, 792 (Fla. 4th DCA 2009). Plaintiff fails to even refer to section 48.193, and fails to allege any causal connection between Bosch LLC's alleged Florida activities and Plaintiff's cause of action.

First, under section 48.193(1)(a)(1), a foreign defendant is subject to the jurisdiction of this Court if it operates, conducts, engages in, or carries on a business or business venture in the state of Florida or has an office or agency in the state of

Florida and this conduct has a causal nexus with the plaintiff's claims. Relevant factors in this analysis include "the presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients." *Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (citations omitted). Another relevant factor is the defendant's marketing and advertising in Florida. *See Carmel & Co. v. Silverfish*, LLC, 2013 WL 1177857, at *3 (S.D. Fla. Mar. 21, 2013) (citation omitted).

Plaintiff makes no allegation that Bosch LLC operates, conducts, engages in, or carries on a business or business venture in Florida—much less that its claims arise from any such business conduct. Bosch LLC is a Delaware Limited Liability Company with its principal place of business in Michigan. (Ex. B, Miklautsch Dec. ¶¶ 3-4). Bosch LLC is not qualified to do business in Florida; does not operate or have an office in the State of Florida; does not have any design, development, manufacturing, testing, or distribution facilities in the State of Florida; and has no members who are residents of Florida. (*Id.* ¶¶ 5-7, 9).[4]

As for Bosch LLC's alleged marketing activity, that marketing activity is irrelevant to the personal jurisdiction analysis. Even as alleged, Bosch LLC's "Clean

---

[4]     To the extent Plaintiff would attempt to base jurisdiction on Bosch LLC's alleged design, manufacture, or sale of software containing defeat devices, this fails for three reasons: First, Plaintiff only pleads that Bosch GmbH designed the software and sold it to Daimler, (SAC ¶¶ 47-48); references to "Bosch" involvement in the design is impermissible group pleading. Second, the alleged conduct was not directed to Florida. Third, affidavits submitted in support of this motion make clear that Bosch LLC did not in fact design, manufacture, or sell the software or ECUs installed in the Mercedes Vehicles.

-10-

Diesel" marketing bears no causal relationship to the alleged software tampering that forms the basis for Plaintiff's claims. Plaintiff claims Bosch LLC violated its emissions tampering ordinance (SAC at Counts I & II)—Plaintiff makes no claim arising from marketing efforts in Florida or elsewhere Put simply, Plaintiff's claims do not arise out of or relate to Bosch LLC's alleged marketing contacts with Florida. Whether or how the Mercedes Vehicles were advertised—and whether or not any Florida consumer relied on such advertising—is unrelated as a matter of logic, evidence, and causation to the question of whether there was tampering with the vehicles' emissions systems. Similarly, Bosch LLC's alleged "Clean Diesel" marketing could not have *caused* the tampering. Finally, Plaintiff makes no allegation that Bosch LLC directed its marketing efforts at Florida; instead, it is alleged to have promoted diesel technology in the U.S. in general and to have targeted *federal* and *California* regulators. (SAC ¶¶ 1, 21, 70-71). Accordingly, this marketing lacks the causal nexus required for the exercise of specific jurisdiction under section 48.193(1)(a)(1).

As for the second statutorily enumerated category, "committing a tortious act within this state," neither of the claims alleged in the SAC involve "tortious acts" under the Florida long-arm statute. There are no tort claims alleged in this lawsuit— only claims based on the alleged violation of EPC rules. (SAC at Counts I & II). Nor, for that matter, are there any well-pled allegations that Bosch LLC committed any wrongful acts in Florida, and Bosch LLC has no design or manufacturing facilities or offices in Florida where the allegedly illegal software could have been designed or created. (Ex. B, Miklautsch Dec. ¶¶ 7-9). Accordingly, section 48.193(1)(a)(2) cannot

-11-

serve as a basis for jurisdiction.

Lastly, any attempt to allege specific personal jurisdiction under section 48.193(1)(a)(6) must fail. Section 48.193(1)(a)(6) confers jurisdiction if the plaintiff alleges that the defendant caused injury within this state, **and** if the plaintiff alleges that "*at or about the time of the injury*," "[p]roducts, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use." Fla. Stat. § 48.193(1)(a)(6) (emphasis added). The assertion of jurisdiction under this section is referred to as jurisdiction based upon a manufacturer placing its goods in the stream of commerce. *S. Wall Prods., Inc. v. Bolin*, 251 So. 3d 935, 939 (Fla. 4th DCA 2018). Bosch LLC did not manufacture the EDC17s or software installed in the Mercedes Vehicles at issue in this case, and so no jurisdictionally relevant Bosch LLC products were used in Florida. (Ex. A, Capuano Dec. ¶¶ 7-12). Additionally, specific personal jurisdiction under the long-arm statute requires "connexity" between Bosch LLC's activities in Florida and the Plaintiff's cause of action. *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 902 (M.D. Fla. 2007). For the reasons noted above, Plaintiff fails to allege the requisite nexus between Bosch LLC's marketing and the cause of action and thus doubly fails to satisfy the requirements of section 48.193(1)(a)(6). Because the Court must strictly construe jurisdictional allegations, the inquiry should end here.[5]

---

[5]     Plaintiff makes no claim that the remaining provisions of the long-arm statute, Fla. Stat. § 48.193(1)(a)(3)-(5) or (7)-(9), apply, nor could they (as the clauses concern respectively real property, insurance, divorce, breach of contract, paternity, and choice-of-law provisions).

2.   **Due Process**

Even if Plaintiff had pled a basis for jurisdiction under the long-arm statute, which it has not, Bosch LLC is not subject to personal jurisdiction under the Due Process Clause of the United States Constitution. To determine whether the assertion of personal jurisdiction comports with due process, the Court must assess: (1) whether the nonresident defendant has sufficient "minimum contacts" with the forum; and (2) whether the exercise of jurisdiction over the defendant would offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

a.   **Bosch LLC does not have sufficient minimum contacts with Florida.**

A three-part test determines whether minimum contacts exist: (i) the contacts must be related to the plaintiff's cause of action; (ii) the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and (iii) the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1220 (11th Cir. 1999). A proper showing of minimum contacts requires that the defendant's actions in the forum state create a "substantial connection" with the forum state, not merely random or fortuitous contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1034 (11th Cir. 1991). Due process requires that a non-resident defendant have "fair warning" that a particular activity may subject him

-13-

to jurisdiction through his own "purposefully directed" activities in the forum. *Burger King*, 471 U.S. at 472.

As explained above, the SAC does not contain well-pled jurisdictional allegations as to Bosch LLC, and Bosch LLC's declarations would negate any that are present. But even assuming that alleged contacts existed, none are in any way related to Plaintiff's claims that Defendants tampered with the Mercedes Vehicles' emissions controls: Bosch LLC did not create, design, develop, manufacture, assemble, supply, or distribute the EDC17s or software alleged to contain defeat devices used in the Mercedes Vehicles, (Ex. A, Capuano Dec. ¶ 7), and the allegations about Bosch LLC's marketing are unrelated to Plaintiff's claims, *see supra* Section I.B.1.a. Without a connection between Plaintiff's claims and Bosch LLC's actions, there can be no jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 931, n.6 (2011) ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales"). Plaintiff's claims against Bosch LLC thus fail under the first step of the minimum-contacts test, requiring dismissal. *See Vermeulen v. Renault, U.S.A. Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993).

The second and third steps of the minimum-contacts test focus on the nature and extent of Bosch LLC's contacts with Florida. As the Supreme Court of the United States has emphasized, the requisite substantial connection "between the defendant and the forum state . . . must come about by *an action of the defendant purposefully directed toward the forum State.*" *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102,

-14-

112 (1987) (emphasis original) Plaintiff's allegations make no suggestion that Bosch LLC has purposefully availed itself of the privilege of conducting relevant activities in Florida or should reasonably anticipate being haled into a Florida court.

Plaintiff does not allege that Bosch LLC maintained any offices, plants, or other facilities in Florida; had any involvement in developing, implementing, or selling the Mercedes Vehicles in Florida; or developed the software in Florida or for vehicles to be specifically sold or driven in Florida. Plaintiff's conclusory allegation that Bosch LLC employees "collaborated in the emissions scheme with Mercedes in this judicial district" (SAC ¶ 16), is unsupported by any facts, alleged or otherwise.

On the contrary, as Plaintiff correctly alleges elsewhere, the EPA regulates the emissions certification of motor vehicles, including the Mercedes Vehicles at issue here. (SAC ¶¶ 27, 31). While Plaintiff characterizes alleged efforts to meet these regulations as a "scheme to evade U.S. emissions requirements," (*id.* ¶ 71), they do not suggest an intent to target *Florida*. Crucially, where a defendant simply directs its conduct towards the United States in general, which is the most that Plaintiff alleges here against Bosch LLC, this is not enough to show that the defendant has purposefully directed its conduct to a particular state. For instance, in *Volkswagen Aktiengesellschaft v. State*, the Texas Court of Appeals held that Volkswagen Germany and Audi Germany were not subject to personal jurisdiction in Texas because "[a]t most, the evidence in the record establishes that VW Germany directed recall-tampering conduct toward the United States as a whole, not to Texas specifically." 2020 WL 7640037, at *5 (Tex. Ct. App. Dec. 22, 2020).

Furthermore, Bosch LLC had no control over the distribution of the Mercedes Vehicles, whether in Florida or elsewhere (Ex. A, Capuano Dec. ¶¶ 6-7 & 12). Bosch LLC's alleged awareness that there were defeat devices installed on Bosch *GmbH* ECUs that were used in vehicles Mercedes distributed in Florida (SAC ¶¶ 3, 16, 25, 48)—which awareness Bosch LLC vehemently denies—is not enough to cause Bosch LLC to anticipate being haled into court in Florida, and thus insufficient to justify the exercise of personal jurisdiction. *See Madara*, 916 F.2d at 1519 (holding defendant not subject to personal jurisdiction in Florida despite making libelous statements to a magazine interviewer because he was not the publisher and so did not direct or control the distribution of the magazine in Florida). Consequently, Bosch LLC does not have sufficient minimum contacts with Florida to subject it to personal jurisdiction here. The Court should conclude that no minimum contacts exist.

### b. Fair play and substantial justice.

Even if the Court finds that minimum contacts exist, which it should not, it must also determine whether exercising personal jurisdiction over Bosch LLC would offend traditional notions of fair play and substantial justice. *Int'l Shoe*, 326 U.S. at 316. It would. Here, Florida has no unique interest in this case. As discussed above, none of Bosch LLC's alleged conduct took place in or targeted Florida. At most, Plaintiff alleges an effort on the part of Bosch LLC to encourage sales of diesel vehicles generally across the United States. Florida has no more particular interest in Bosch LLC's conduct than does, for example, Michigan, which theoretically was equally affected by the alleged scheme, and is also Bosch LLC's principal place of business.

On the other hand, forcing Bosch LLC to litigate in Florida imposes a substantial burden. Witnesses and documents will be located outside the state, whereas there is no apparent evidence that will be located in Florida. *See Response Reward Sys., L.C. v. Meijer, Inc.*, 189 F. Supp. 2d 1332, 1339 (M.D. Fla., 2002). Under these circumstances, compelling Bosch LLC to litigate these claims in Florida would be unjust. In sum, in the absence of a basis for the exercise of general or specific jurisdiction over Bosch LLC, Plaintiff's claims against Bosch LLC must be dismissed.

## II.    Plaintiff Fails to State a Claim Against Bosch LLC

The Complaint should be dismissed for the further reason that Plaintiff fails to allege facts sufficient to state a claim against Bosch LLC. The anti-tampering and anti-defeat device regulations upon which Plaintiff's claims are predicated do not apply to conduct related to the original design of the emissions control system, nor do they relate to any manufacturer-designed updates of that system.

As an initial matter, Plaintiff fails to state a claim because, as pled in the SAC, Bosch LLC did not do any relevant engineering work on the Mercedes Vehicles. While Plaintiff improperly attempts to lump Bosch LLC in with the other Defendants, the SAC alleges that Bosch GmbH designed and manufactured the EDC17s for the Mercedes Vehicles, (SAC ¶¶ 47-48) and only that Bosch LLC "helped promote 'Clean Diesel' [(not the EDC17s or the Mercedes Vehicles)] in the United States and acted to deceive regulators as to compliance with emissions standards," (SAC ¶ 70). The anti-tampering and anti-defeat device regulations do not reach such promotional conduct. *See* EPC Rule 1-8.

Moreover, even assuming *arguendo* that vague allegations such as "[e]ach Bosch entity participated [] in the development of the defeat device" (SAC ¶¶ 21, 72), are well-pled as to Bosch LLC, Plaintiff still fails to state a claim. Even if not completely preempted, which they are for the reasons set out in Section III.A of the Mercedes Defendants' Motion, Dkt. 71, the plain meaning of the anti-tampering and anti-defeat device regulations is that they apply to persons other than the original suppliers of emissions control systems. *First*, "tampering" under Hillsborough's regulations is defined as "the intentional inactivation, disconnection, removal or other modification of a component or components of the emission control system resulting in it being inoperable." EPC Rule 1-8.03(2)(h). "[E]mission control system," in turn, is defined in relevant part as "devices and mechanisms installed as *original equipment at the time of manufacture*." *Id.* at 1-8.03(2)(b) (emphasis added). Here, there is no allegation that Bosch LLC (or any other Bosch entity) tampered with the original emission control system *after* its sale to consumers as original equipment at the time of manufacture.[6]

*Second*, the anti-defeat device regulation can concern only the defeat of a "component of a motor vehicle's emission control system" that has already been installed and is functioning as the manufacturer intended. *See id.* at 1-8.05(6). Again,

---

[6]   Count I of the SAC includes a reference to "a program of newly created field fixes," ¶ 90, but as explained in Section III.B of the Mercedes Defendants' Motion, this allegation is not supported by any well-pled facts. In any event, the definition of "emission control system" also encompasses "devices and mechanisms later installed during repair or replacement of original equipment, or during vehicle modification or retrofit as required by law," EPC Rule 1-8.03(2)(b), and thus includes authorized repairs or modifications.

no such conduct is alleged here. Rather, Plaintiff alleges that "Bosch's Diesel Systems division" developed the EDC17, which Mercedes purportedly used to implement a defeat device in the affected vehicles *before* they were certified for sale by the EPA. (SAC ¶¶ 22, 44, 48). Bosch LLC's alleged conduct is simply not reached by the language of EPC Rule 1-8.03(2)(b).

Plaintiff may invoke *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 310 F. Supp. 3d 1030, 1037 (N.D. Cal. 2018), *aff'd in part, rev'd in part*, 959 F.3d 1201 (9th Cir. 2020) ("*VW Hillsborough*") to support its position.[7] However, Bosch LLC respectfully submits that the decision was wrongly decided and, in any case, reflects the extraordinary nature of Volkswagen's conduct. At the time of Judge Breyer's decision, Volkswagen had already pled guilty to criminal charges and stipulated that its vehicles contained a "defeat device." *Id.* at 1033-1034. Though Plaintiff asserts that the allegations in this case are "[]identical to the allegations in [*VW Hillsborough*]", SAC ¶ 37, it makes no comparable well-pled and non-conclusory allegations here, and no Defendant here has admitted to any wrongdoing or been found to be criminally liable.

Furthermore, to the extent the *VW Hillsborough* court found that EPC Rule 1-8 penalizes any software that "reduce[s] the effectiveness of the vehicles' emission controls during normal on-road driving," 310 F. Supp. 3d at 1037, its reasoning is incompatible with the reality of how modern vehicles operate. This reality is reflected

---

[7]    The Ninth Circuit was not asked to and did not consider the failure to state a claim argument on appeal.

in EPA regulations, which expressly provide that in certain situations, software that "reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation" may be a necessary part of a safe and properly functioning emission control system and would not be considered a "defeat device." *See* 40 CFR § 86.1803-01. Plaintiff's expansive interpretation of EPC Rule 1-8 would appear to penalize these legal – and often essential – features.

Similarly, as Judge Breyer recognized, a broad reading of the rule might even penalize EPA-approved software fixes, such as those mandated by an EPA consent decree. 310 F. Supp. 3d at 1046 n.7. While Judge Breyer accepted that reading – and in part on that basis found the rule preempted – the Court could reach the same result by the far more natural interpretation of EPC Rule 1-8, which is that it does not concern the original installation of the emission control system (including associated hardware, software, and calibration data) or updates to the system implemented by the original vehicle manufacturers on a fleet-wide basis. Here, because the claims concern such original equipment and alleged nationwide updates, Plaintiff fails to state a claim for relief as a matter of law.

## CONCLUSION

For the foregoing reasons, Plaintiff's Second Amended Complaint should be dismissed with prejudice.

Dated:  February 8, 2021                    Respectfully Submitted,

                                            */s/ Jennifer Kennedy Park*

Jennifer Kennedy Park
Abena A. Mainoo
Charity E. Lee
CLEARY GOTTLIEB STEEN
& HAMILTON LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2000 (Telephone)
(212) 225-3999 (Facsimile)
jkpark@cgsh.com
amainoo@cgsh.com
charitylee@cgsh.com
Matthew D. Slater
CLEARY GOTTLIEB STEEN
& HAMILTON LLP
2112 Pennsylvania Avenue NW
Washington, D.C. 20037
(202) 974-1500 (Telephone)
(202) 974-1999 (Facsimile)
mslater@cgsh.com


William J. Judge Jr. (FBN: 426296)
william.judge@hwhlaw.com
debra.whitworth@hwhlaw.com
Carolina Y. Blanco (FBN: 98878)
carolina.blanco@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
(813) 221-3900 (Telephone)
(813) 221-2900 (Facsimile)
*Attorneys for Defendant Robert Bosch LLC*