UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ENVIRONMENTAL PROTECTION
COMMISSION OF HILLSBOROUGH
COUNTY, FLORIDA,

    Plaintiff,
v.                                 Case No. 8:20-cv-2238-VMC-JSS

MERCEDES-BENZ USA, LLC,
DAIMLER AKTIENGESELLSCHAFT,
ROBERT BOSCH, LLC,
and ROBERT BOSCH GMBH,

    Defendants.
_____/

**ORDER**

This matter is before the Court on consideration of Defendants Daimler Aktiengesellschaft and Mercedes-Benz USA, LLC's ("the Mercedes Defendants'") Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. # 122), filed on January 20, 2022. Plaintiff Environmental Protection Commission of Hillsborough County, Florida responded on February 10, 2022. (Doc. # 135). The Mercedes Defendants replied on March 4, 2022. (Doc. # 144). The Motion is granted to the extent set forth herein.

**I.   Background**

The Commission, a unit of Hillsborough County's government responsible for providing and maintaining

1

standards of atmospheric purity, initiated this action on September 24, 2020. (Doc. # 1). The Commission then filed a third amended complaint on December 16, 2021, seeking monetary penalties and injunctive relief for violations of the Commission's anti-tampering ordinance, EPC Rule Chapter 1-8, "Mobile Source." (Doc. # 116).

According to the third amended complaint, all Defendants engaged in a conspiracy to create and install "defeat device" software in new Mercedes diesel vehicles to reduce the effectiveness of the vehicles' emission control systems when not in an emissions-testing environment. (Id. at 1-4).

The Commission's claims are not, however, based on the creation of these defeat devices and their installation in new Mercedes vehicles pre-sale. Rather, the Commission "is only asserting claims relating to post-sale activities of the Defendants." (Id. at 4). Specifically, the Commission bases its claim in part on "every post-sale update that does not remove the workaround" — the defeat device — from the relevant Mercedes vehicles. (Id. at 29).

The Defendants also allegedly "violated EPC Rule Section 1-8.05(1) . . . by tampering with the emission control systems of Affected Vehicles registered in Hillsborough County, and manufacturing and installing post-sale software updates in

2

Affected Vehicles registered in Hillsborough County." (Id. at 44). "Because Mercedes represents and maintains that their engines require steady service to remain operative, numerous post-sale updates to the emissions control systems, created through collaboration amongst all of the Defendants, have been implemented and installed throughout the United States, Florida, and Hillsborough County." (Id. at 27-28). "It is industry standard for manufacturers, including Mercedes, to make such post-sale software updates available to their dealerships via web-based computer programs." (Id. at 28). Mercedes allegedly "sometimes issue[s] such post-sale software changes via over-the-air updates." (Id.).

Additionally, the Commission also alleges that the "Defendants' conduct in tampering post-sale with the emission control systems of Affected Vehicles registered in Hillsborough County, through a program of newly created field fixes and recall campaigns, violates EPC Rule Chapter 1-8." (Id. at 44-45).

The Mercedes Defendants now seek dismissal of the claims against them based on preemption, failure to state a claim, and other arguments. (Doc. # 122). The Motion is fully briefed (Doc. ## 135, 144), and ripe for review.

3

## II. Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

4

Additionally, "[a] plaintiff is 'not required to negate an affirmative defense in [its] complaint.' Thus, '[g]enerally, the existence of an affirmative defense will not support a motion to dismiss.'" Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP, 609 F. App'x 972, 976 (11th Cir. 2015) (citations omitted).

### III. Analysis

The Mercedes Defendants raise multiple arguments for dismissal. The Court addresses them in turn.

#### A. Preemption

First, the Mercedes Defendants argue that the Commission's claims are preempted by the Clean Air Act ("CAA").

The Court rejects this argument and, instead, follows the reasoning of the Ninth Circuit in In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig., 959 F.3d 1201 (9th Cir. 2020), cert. denied sub nom. Volkswagen Grp. of Am., Inc. v. Env't Prot. Comm'n of Hillsborough Cnty., 142 S. Ct. 521 (2021) — another emissions case brought by the Commission and other county governments. The Ninth Circuit held that the CAA neither expressly nor impliedly preempts claims related to post-sale tampering with emission control systems. Id.; see also State ex rel. Yost v. Volkswagen

5

Aktiengesellschaft, 165 Ohio St. 3d 213, 218 (Ohio 2021) (holding that the post-sale anti-tampering provision of Ohio's Air Pollution Control Act was neither expressly nor impliedly preempted by the Clean Air Act), cert. denied sub nom. Volkswagen Aktiengesellschaft v. Ohio, 142 S. Ct. 515 (2021).

### 1. **Express Preemption**

The CAA "expressly preempts certain state and local laws regulating emissions from new motor vehicles." In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig., 959 F.3d at 1215. Section 209(a) of the CAA provides:

> No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part. No State shall require certification, inspection, or any other approval relating to the control of emissions from any new motor vehicle or new motor vehicle engine as condition precedent to the initial retail sale, titling (if any), or registration of such motor vehicle, motor vehicle engine, or equipment.

42 U.S.C. § 7543(a). "A 'new motor vehicle' is 'a motor vehicle the equitable or legal title to which has never been transferred to an ultimate purchaser,' § 7550(3), in other words, a pre-sale vehicle." In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig., 959 F.3d at 1215. "In light of this definition, [Section] 209(a) precludes

6

state or local governments from imposing any restriction that has the purpose of enforcing emission characteristics for pre-sale, motor vehicles." Id. at 1216. "After a new motor vehicle is sold 'to an ultimate purchaser,' 42 U.S.C. § 7550(3), the express preemption clause no longer applies. Instead, the CAA preserves state and local governments' authority over post-sale motor vehicles." Id. at 1216.

The Ninth Circuit rejected Volkswagen's argument that the Commission's rules, including the same EPC Rule Section 1-8.05(1) at issue here, were preempted as applied to post-sale vehicles:

> We turn to Volkswagen's argument that [Section] 209(a) also expressly preempts the Counties' anti-tampering rules as applied to post-sale vehicles. It clearly does not. By its terms, [Section] 209(a) preempts state and local regulations "relating to the control of emissions from *new* motor vehicles." 42 U.S.C. § 7543(a) (emphasis added). The provision does not apply to post-sale vehicles.

Id. at 1218. For the same reason, the Court holds that express preemption does not apply to the Commission's claims here, which are based on alleged post-sale tampering in the form of software updates, field fixes, and recalls.

This is true even though the Commission bases its post-sale tampering claim in part on what the Mercedes Defendants' dub the "inaction theory" of tampering, under which the

7

Commission argues that post-sale software updates constituted tampering because they failed to remove the original defeat device. The Court does not agree that this inaction theory would require car manufacturers to alter their design or manufacture of new vehicles before sale. Because even under the inaction theory the Commission bases its claims on tampering with post-sale vehicles, the claims are not expressly preempted.

### 2. Implied Preemption

"The Supreme Court has articulated two circumstances — referred to as 'field preemption' and 'conflict preemption' — where Congress's implicit intent to preempt state law clears [the high threshold to find implied preemption]. First, 'when federal law occupies a "field" of regulation "so comprehensively that it has left no room for supplementary state legislation,"' a court may infer that Congress intended to preempt state law." Id. at 1212 (citations omitted). "Second, when a state law 'actually conflicts with federal law,' either because 'compliance with both state and federal law is impossible,' or because 'the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,"' a court may again

8

conclude that Congress implicitly intended to preempt state law." Id. (citations omitted).

Here, the Mercedes Defendants argue that the Commission's claims are impliedly preempted under obstacle and impossibility preemption theories. (Doc. # 122 at 15).

Regarding obstacle preemption, in Volkswagen, the Ninth Circuit rejected the argument that the Commission's and other counties' tampering claims were impliedly preempted. That court wrote:

> The CAA's preemption clause (§ 209(a)) and saving clause (§ 209(d)) allocate authority between the federal government and state governments as follows: Section 209(a) gives the EPA exclusive authority to establish standards for new vehicles, 42 U.S.C. § 7543(a), while § 209(d) preserves the authority of state and local governments over post-sale vehicles, 42 U.S.C. § 7543(d). The plain language of § 209(d), providing that nothing in Title II "shall preclude or deny to any State or political subdivision thereof the right otherwise to control, regulate, or restrict the use, operation, or movement of registered or licensed motor vehicles," appears to give states substantial authority to enforce standards related to post-sale vehicles, including sanctioning tampering with emission control systems.

In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig., 959 F.3d at 1219. Thus, "the CAA's text and structure, particularly in light of the presumption that Congress does not impliedly preempt states' historic police

powers, weigh against a conclusion that Congress intended to preempt the Counties' anti-tampering rules." Id. at 1221.

Likewise, "[t]he regulation of air pollution from post-sale vehicles does not involve a 'uniquely federal' area of enforcement, because the basic division of responsibility in Title II of the CAA reflects the cooperative federalism principles that have long informed this nation's air pollution control laws." Id. (citation omitted). The Ninth Circuit also could not "discern a congressional intent, let alone a 'clear and manifest purpose of Congress,' to give the EPA exclusive authority over large-scale, post-sale tampering by manufacturers, while giving state and local governments concurrent authority only when the tampering is conducted on a more casual, individual basis." Id. at 1223. Thus, that court correctly concluded that state and local authority "to enforce anti-tampering rules on a model-wide basis" was not preempted. Id.

The Court adopts the Ninth Circuit's reasoning and concludes that the Commission's claims are not preempted under the obstacle preemption doctrine. The Mercedes Defendants' attempts to distinguish the post-sale tampering in Volkswagen and this case are unavailing. While the Mercedes Defendants argue that the Volkswagen court intended only for

post-sale tampering claims involving "enhancements" to defeat devices to escape preemption (rather than inaction-based tampering or field fixes and recalls) (Doc. # 122 at 18), no such limitation was announced by that court. Instead, the Volkswagen ruling stands for the proposition that post-sale tampering claims in general are not impliedly preempted and is persuasive in its reasoning.

Nor is the Court persuaded by the Mercedes Defendants' argument under the impossibility theory of preemption. They argue that "it would be impossible for the Mercedes Defendants to comply with both the Consent Decree [entered by them and the EPA and the California Air Resources Board in United States v. Daimler AG, No. 1:20-cv-02564 (D.D.C. Mar. 9, 2021)] and [the Commission]'s ordinance." (Doc. # 122 at 15). The Court rejects this argument for multiple reasons. First, the Mercedes Defendants have cited no case in which a consent decree entered in a federal lawsuit was found to preempt a state or local government's rule or ordinance. Thus, the Court is not convinced that the consent decree could support obstacle preemption. Even if it did, the Court has only taken judicial notice of the consent decree's existence — not its contents (Doc. # 143) — such that the Court cannot determine

whether the terms of the consent decree conflict with the Commission's anti-tampering rule at this time.

Finally, even crediting the Mercedes Defendants' representations about the contents of the consent decree, the Court is not convinced that it would be impossible for the Mercedes Defendants to comply with both EPA regulations and the Commission's rule against post-sale tampering. See State ex rel. Yost, 165 Ohio St. 3d at 220–21 ("[W]e reject Volkswagen's argument that the potential imposition of state-law penalties under [Ohio's Air Pollution Control Act] makes it impossible for the federal EPA to administer its vehicle-emissions program or interferes with the federal EPA's ability to resolve enforcement actions. First of all, it is not impossible for a violator to pay federal penalties and state-law penalties relating to the same conduct, so exposure to liability at the state level does not necessarily frustrate the purpose of the federal scheme." (citations omitted)). As the Commission argues, "[s]hould Defendants, pursuant to their Consent Decree, craft and have approved a post-sale update that cures the defect [in the emission control system], which is assumedly the goal, that update would not fit the definition of tampering" under the Commission's rule. (Doc. # 135 at 11).

12

The Commission's post-sale tampering claims are not preempted. Whether the post-sale tampering claims are sufficiently pled is a different question.

**B.    Plausibility**

The Mercedes Defendants also argue that the claims against them should be dismissed under Rule 12(b)(6) because the Commission has not stated plausible claims for violation of EPC Rule Section 1-8.05(1). The Court agrees.

EPC Rule Section 1-8.05(1) provides: "No person shall tamper, cause, or allow the tampering of the emission control system of any motor vehicle." EPC Rule § 1-8.05(1). Section 1-8.03(2)(h) defines "tampering" as "the **intentional** inactivation, disconnection, removal or other modification of a component or components of the emission control system **resulting in it being inoperable**." EPC Rule § 1-8.03(2)(h) (emphasis added). Section 1-8.03(2)(c) defines "inoperable emission control system" as "any emission control system or component thereof whose operation or efficiency has been circumvented, defeated, or deleteriously affected by improper maintenance, improper up-keep, wear and tear, misfueling, or tampering." EPC Rule § 1-8.03(2)(c).

First, the Mercedes Defendants attack what they dub the "inaction theory" — that is, the Commission's theory that any

13

post-sale updates to Mercedes vehicles that do not remove the original defeat devices constitute post-sale tampering. In the third amended complaint, the Commission alleges that "every post-sale update that does not remove the workaround," by which the Commission refers to the original defeat device, is "illegal." (Doc. # 116 at 29). In its response, the Commission confirms that it is — at least in part — proceeding under this inaction theory: "Each post-sale update that fails to remove or otherwise disable the improper programming of the defeat device is post-sale tampering." (Doc. # 135 at 15).

As the Mercedes Defendants persuasively argue, "[b]y relying on a theory of mere inaction — that failure to 'remove' an alleged defeat device is tampering — [the Commission] expressly eschews any requirement to show an intentional affirmative act or resulting causation" and fails to show that an emission control system was rendered "inoperable" "by virtue of post-sale updates." (Doc. # 122 at 23-24).

The Court agrees that software updates that merely fail to remove the original defeat device from Mercedes vehicles do not plausibly violate EPC Rule Section 1-8.05(1). These updates are not "tampering" as defined by the rule because

14

they do not cause the emissions control system to be inoperable. Rather, the original pre-sale defeat devices — on which the Commission has not and cannot base its claims — have rendered the emissions control system inoperable and the later software update has no effect on that system. Thus, Count I is dismissed with prejudice to the extent it is based on software updates that simply do not remove the original defeat device.

The Mercedes Defendants also highlight the limited nature of the other allegations that do not rely on the inaction theory. The third amended complaint states that Defendants committed tampering by "manufacturing and installing post-sale software updates," including through "field fixes and recall campaigns." (Doc. # 116 at 44). No information is provided about when any recalls or field fixes occurred for vehicles registered in Hillsborough County. Nor are there allegations about how the field fixes, recalls, or post-sale software updates tampered with the vehicles' emission control systems, such as by rendering a system even less functional than it had been with the original defeat device. The Mercedes Defendants are correct that these allegations are insufficiently detailed to state a plausible claim.

However, the Court is not persuaded that amendment would be futile as to the allegations not based on the inaction theory. The Commission could plead greater detail about the software updates, field fixes, and recalls on which its claims rely. And the Court is not convinced at this juncture that the Commission's claims are barred by the statute of limitations, given that the dates of the relevant post-sale software updates, field fixes, and recalls are not alleged. See United States ex rel. Hunt v. Cochise Consultancy, Inc., 887 F.3d 1081, 1085 (11th Cir. 2018) ("A dismissal for failure to state a claim on statute of limitations grounds is appropriate 'only if it is apparent from the face of the complaint that the claim is time-barred.'" (citation omitted)), aff'd, 139 S. Ct. 1507 (2019).

The Commission may file a fourth amended complaint to address the identified deficiencies in its tampering allegations, which underlie both Counts I and II. Because amendment is necessary, the Court need not address the Mercedes Defendants' other arguments at this time.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants Daimler Aktiengesellschaft and Mercedes-Benz USA, LLC's Motion to Dismiss Plaintiff's Third Amended

16

Complaint (Doc. # 122) is **GRANTED** to the extent stated herein.

(2) If Plaintiff Environmental Protection Commission of Hillsborough County, Florida wishes to amend, the fourth amended complaint is due within fourteen days of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>18th</u> day of April, 2022.

*[signature]*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE